**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAWN CHAPPEL,                                           Case No. 1:24-cv-318

              Plaintiff,                              Hopkins, J.
                                                        Bowman, M.J.

     v.

MAGISTRATE DAVID HUNTER, et al.,

              Defendants.

**REPORT AND RECOMMENDATION**

On June 10, 2024, Plaintiff Dawn Chappel, proceeding pro se, filed an application seeking to initiate the above-captioned case *in forma pauperis*, or without payment of a filing fee. By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is now before the Court for a sua sponte review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

For the reasons that follow, the undersigned recommends that Plaintiff's complaint be DISMISSED, and that her separately tendered motions for a stay of state court proceedings and for a temporary restraining order and preliminary injunctive relief be DENIED. In addition, the undersigned recommends that Plaintiff be formally warned that the initiation of a fourth legally frivolous and repetitive lawsuit in this Court is likely to result

in a judicial finding that she is a vexatious litigator and the imposition of prefiling restrictions.

## I.     The Screening Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)).To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327.

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d

2

at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II.     Plaintiff's Prior Litigation

Plaintiff previously filed two federal cases involving the same state protective custody proceedings that form the basis for the above-captioned lawsuit. *See Chappel v. Adams County Children's Services, et al.*, No. 1:22-cv-747-SJD-KLL and *Chappel v. Hunter, et al.*, No. 1:23-cv-728-DRC-SKB. Both of those cases were dismissed upon initial screening under 28 U.S.C. § 1915(e)(2)(B).

In her first case in this Court, Plaintiff sued Adams County Childrens' Services ("ACCS") and Ashlee Moore, a caseworker with ACCS. On initial screening, Magistrate

3

Judge Karen Litkovitz filed a Report and Recommendation ("R&R") that recommended the *sua sponte* dismissal of Plaintiff's prior complaint with prejudice. In a Supplemental R&R, Magistrate Judge Litkovitz recommended the denial of Plaintiff's motion to amend her complaint. On May 19, 2023, U.S. District Judge Susan Dlott adopted the original R&R as written and the Supplemental R&R with modification. The Court held that both Plaintiff's original claims and her proposed amended complaint were equally barred for lack of jurisdiction based on the *Rooker-Feldman* doctrine, and also were barred under *Younger* abstention to the extent that the child custody proceedings that formed the basis of Plaintiff's federal complaint remained ongoing in Adams County. *See Chappel v. Adams Cnty. Children's Services*, No. 22-cv-747, 2023 WL 4191724, *3-4 and n.8 (S.D. Ohio May 19, 2023); *see also id*., *7 n.12. In the alternative, the Court concluded that Plaintiff's proposed amended complaint failed to state any claim for relief against either ACCS or Moore. The Court dismissed Plaintiff's complaint with prejudice and certified that an appeal would not be taken in good faith. (*Id*.)

Less than six months later, Plaintiff filed a second lawsuit in which she named a new set of defendants[1] and attempted to raise new claims,[2] while continuing to challenge the validity of state court proceedings related to the custody of her children. *See Chappel v. Hunter*, No. 1:23-cv-728-DRC-SKB. On December 7, 2023, the undersigned filed an R&R that recommended dismissal of her second complaint with prejudice on multiple grounds, including based on a lack of federal jurisdiction, the

---

[1] The defendants named in Plaintiff's second lawsuit included two state court judges who presided over the custody dispute, two public defenders who represented Chappel in those proceedings, the juvenile court's guardian ad litem, the Adams County Board of Commissioners, and an official with the Adams County Health Department. (Doc. 5 ¶¶ 2–8, #277–78).

[2] Six of the seven new claims alleged procedural due process violations, while a seventh claim was construed as alleging a substantive due process violation. (*See* No. 23-cv-728, Doc. 9, PageID 582-583, summarizing claims).

Eleventh Amendment, the *Burrus* abstention doctrine, the *Rooker-Feldman* doctrine, and *Younger* abstention. *See generally*, No., 1:23-cv-728-DRC-SKB, (R&R at Doc. 7). In objections to that R&R, Plaintiff abandoned her demands for broad declaratory and injunctive relief relating to most claims, as well as her requests for compensatory and punitive damages. She also abandoned her request for reversal of the state court's prior orders. (*See* Doc. 9, PageID 584). On March 27, 2024, U.S. District Judge Cole construed Plaintiff's express disavowal of her claims for relief as a form of amendment to her complaint. The Court therefore construed her complaint as seeking only limited declaratory and equitable relief relating to the termination of the state's drug testing procedures. (*Id.*, Doc. 9 at PageID 587).

The constructive amendment of Plaintiff's claims for relief essentially mooted portions of the R&R's analysis. Ultimately, Judge Cole adopted in part, modified in part, and rejected in part that R&R. In lieu of the recommended dismissal with prejudice, Judge Cole dismissed Plaintiff's complaint *without* prejudice solely for lack of jurisdiction. Judge Cole explained that Plaintiff's amendment of her claims for relief created a "redressability" issue, because the newly limited relief would not provide a remedy for most of the claims asserted. Therefore, Plaintiff lacked standing to pursue five of her seven claims. (*Id.*, PageID 589-591, discussing Plaintiff's lack of standing for Counts 1, 2, 3, 5, and Count 6).[3] The Court further held that the Eleventh Amendment, *Younger* abstention and the *Burress* doctrine barred Plaintiff's remaining two claims. (*Id.*, PageID 592-595). Finally, the Court denied as moot Plaintiff's separate petition for writ of habeas corpus, along with a construed motion for judgment on the pleadings, in

---

[3]Judge Cole also reasoned that Plaintiff lacked standing to assert her children's rights because her children are no longer in her custody.

light of the dismissal of all other claims. (*Id.*, PageID 598).

### III. Allegations of Plaintiff's Third Complaint

Two and a half months after the dismissal of her second complaint, Plaintiff submitted a third iteration. Notably, Plaintiff's new 32-page complaint, supported by another 195 pages of exhibits, challenges the same ongoing Adams County Juvenile Court proceedings at issue in Plaintiff's prior two lawsuits. Once again, Plaintiff's complaint is based on her status as the biological mother of the two minor children who are the subject of state court custody proceedings. Again, she contends that her two children were wrongfully removed from her custody in November 2022, that her civil rights were violated during the investigation and removal process, and subsequently through improper drug screening including multiple false positive tests.

Since the dismissal of Plaintiff's last case, Plaintiff has continued to implore the state court to return custody of the children to her, without success. State court records attached to Plaintiff's latest complaint reflect the following recent developments: (1) the recusal of Judge Spencer and withdrawal of GAL Carrington in February 2024; (2) the appointment of Judge Margaret A. Clark as the new presiding judge and the appointment of a new GAL for the minor children,[4] (3) Plaintiff's May 2024 execution of a waiver of counsel that reflects her intent to proceed pro se in future state court proceedings; and (4) an April 2024 judgment entry directing ACCS to file a "Permanent Custody Motion with the Court." (Doc. 1-1, Ex. 36-42, 45, PageID 134-147, 150). The new pleading and supporting exhibits further reflect that the state court has set the matter for a pre-trial hearing on July 19, 2024, and has scheduled the permanent custody hearing on ACCS's

---

[4]Initially, Christine Scott was appointed as the new GAL but that appointment was subsequently changed to Ms. K. Danielle Whitt. (Doc. 1-1, PageID 152).

pending motion for permanent custody for August 9, 2024. (Complaint at ¶ 81; *see also id.*, Ex. 46, PageID 152). In addition to her new complaint, Plaintiff has submitted a "motion for stay" seeking an immediate stay of custody proceedings scheduled for July 19 and August 9, 2024 concerning the permanent custody of her children, and a motion for a temporary restraining order and preliminary injunction seeking the same relief sought in her complaint. (Docs. 1-3, 1-4).

Rereading the pleadings filed in Plaintiff's prior two federal cases, the undersigned has confirmed that most of the same allegations have been restated in her current case, with the primary differences being Plaintiff's inclusion of allegations regarding more recent state court proceedings and slight differences in the cast of characters and claims asserted. Six of the named Defendants in Plaintiff's current complaint were previously named as defendants in No. 23-cv-728-DRC-SKB, including: Magistrate David Hunter, Adams County Court of Common Pleas Judge Brett Spencer, public defenders Tyler Cantrell and Sarah Shelton; Adams County guardian ad litem ("GAL") Mackenzie Carrington; and Shayla Tumbleson, a Peer Recovery Specialist at the Adams County Health Department. However, in her 2023 case, Plaintiff also named the Adams County Board of Commissioners. She omits that entity in the instant case but adds as a defendant the new presiding judicial officer, Judge Margaret A. Clark,[5] as well as (in her caption) Defendant Does 1-100. (See No. 1:24-cv-317-JPH-SKB, Doc 1-1, ¶¶ 2-8, PageID 7-8).

Briefly, all three of Plaintiff's complaints trace the challenged custody proceedings to the actions of an Adams County Children's Services ("ACCS") employee, Ashlee Moore. In both prior complaints and in her current complaint, Plaintiff alleges Ms. Moore

---

[5] Although Plaintiff repeatedly refers to her as "Magistrate Clark," Judge Clark is a retired Brown County Court of Common Pleas judge sitting by assignment.

played a central role in obtaining a state court order that resulted in the removal of Plaintiff's children from her custody in November 2022. (Doc. 1-1, ¶¶ 17-23). Plaintiff complains of various procedural due process violations regarding related hearing(s), and that ACCS officials and others entered her home pursuant to an allegedly improper complaint and resulting improper court order(s). (Doc. 1-1, ¶¶ 40, 42, 44 PageID 14). She further complains that she was subjected to a violation of the Fourth Amendment when the state court granted an order allowing entry into her home "without providing the family notice and an opportunity to object." (*Id.*, ¶ 41).

According to Plaintiff, Magistrate Hunter adjudicated the Plaintiff's children as dependent on November 23, 2022 and issued temporary custody to ACCS. He also ordered Plaintiff and the children's father to undergo mental health and drug and alcohol assessments. (*Id.*, ¶ 51, 53). Defendant Attorney Shelton was Plaintiff's court-appointed attorney at the time. Plaintiff alleges that she tried to submit evidence to the court, but Magistrate Hunter handed the documents to Ms. Shelton. Plaintiff alleges that after the November hearing, Ms. Shelton withdrew from representation without filing an objection to Magistrate Hunter's refusal to review Plaintiff's documentary evidence. (*Id.*, ¶47, 121).

After Ms. Shelton's withdrawal, the court appointed Defendant Tyler Cantrell to represent Plaintiff. (*Id.*, ¶ 57). Attorney Cantrell appeared on Plaintiff's behalf at a hearing held in February 2023, but Plaintiff later sought his removal based on an alleged conflict of interest. The state court granted Plaintiff's motion. (*Id.*, ¶ 121, 125).

Throughout the instant complaint as well as in her prior federal cases, Plaintiff disputes the procedures used to remove her children from her home and the allegations of substance abuse made against her in state court proceedings. She alleges that findings

8

of drug use were based on tests that were improperly administered by employees including Defendant Shayla Tumbleson, and/or that the results reflect false positives. Plaintiff complains of other violations of her due process rights during state court proceedings, including the alleged forging of her signature on a case plan, the exclusion of Plaintiff's evidence and witnesses, and inadequate notice of a prior motion to extend the agency's custody and for permanent custody. (*See id.*, ¶¶ 71-75, 84).

In addition to alleging wrongdoing during ongoing custody proceedings involving Plaintiff's own children, Plaintiff's pleadings include allegations relating to custody proceedings of an unrelated nonparty parent, whom Plaintiff identifies as "A.C." Plaintiff generally alleges that A.C.'s children also were wrongfully removed. She suggests that the agency's motive in removing Plaintiff's children "could very well be a case of retaliation for her advocating for [A.C.'s] family." (*Id.* ¶ 91).

Based on the foregoing allegations, Plaintiff sets forth four causes of action. Her first claim, under 42 U.S.C. § 1983, asserts that judicial officers Magistrate Hunter and Judge Spencer "violated the Fourth Amendment by granting orders allowing entry into the Plaintiff's home without evidence to support probable cause" when her children were first removed. (*Id.*, ¶111). She also alleges violations of her procedural due process rights based on November 2022 state court orders permitting entry into her home to remove her children. (*Id.*, ¶123).

Plaintiff's second claim also ostensibly arises under federal law. In her second cause of action, she alleges that the three state judicial officers, her two formerly appointed attorneys, and prior GAL Mackenzie Carrington all violated Plaintiff's substantive due process rights by "the use of unreliable drug tests" in prior state court

proceedings. (*Id.*, ¶ 120). She also cites the procedural due process violations that allegedly occurred at the November 23, 2022 hearing before Magistrate Hunter, including the court's refusal to review her evidence and failure of her court-appointed attorneys to sufficiently advocate for Plaintiff. (*Id.*) Among a litany of violations, she cites an alleged conflict of interest by one court-appointed attorney, judicial bias, retaliatory actions, and many procedural irregularities "such as forged signatures and omitted pages." (*Id.*, ¶¶ 122-128).

In contrast to her first two claims, Plaintiff's third and fourth causes of action arise (if at all) under state law. Her third cause of action alleges that various Defendants are liable for the negligent infliction of emotional distress, while her fourth cause of action alleges the intentional infliction of emotional distress

## II. Analysis

### A. Applicability of the Court's Analysis in Plaintiff's Two Prior Cases

Consistent with this Court's prior analysis of the complaints filed in Case Nos. 22-cv-747-SJD-KLL and 23-cv-728-DRC-SKB, the undersigned recommends the dismissal of the above-captioned civil complaint under 28 U.S.C. § 1915(e)(2)(B). In a section of her new complaint titled "Jurisdiction and Venue," Plaintiff argues that the reasons stated for the dismissal of her two prior complaints should not apply to the above-captioned complaint. (Doc. 1-1 at ¶¶ 9-16, PageID 8-9). The undersigned is not persuaded.

For example, Plaintiff argues that the *Rooker-Feldman* doctrine does not bar her current claims because there is no final state court judgment, and her federal claims are independent of state court decisions. (Doc. 1-1 at ¶12). She argues that the *Burrus* doctrine is inapplicable to federal constitutional claims and that the *Younger* abstention

doctrine does not apply because "no state proceedings were ongoing" when the alleged constitutional violations first occurred. Additionally, she claims that there is no adequate opportunity for her to raise her claims in state court, and that the state court has operated in bad faith. (*Id.* at ¶ 13-15).

Notwithstanding the slightly different formulation of claims and defendants, this Court's prior analysis of the *Rooker-Feldman* doctrine (to the extent that the prior state court custody rulings remain the source of Plaintiff's injuries)[6] and of *Younger* abstention (to the extent that the state custody proceedings remain ongoing) applies with equal force to Plaintiff's latest complaint. In the interests of judicial economy, that prior analysis is incorporated herein as if fully restated *See Chappel v. Adams Cnty. Children's Services*, No. 22-cv-747, 2023 WL 4191724, *3-4 and n.8 (S.D. Ohio May 19, 2023); *id.*, *7 and n.12; *see also Chappel v. Hunter,* No., 1:23-cv-728-DRC-SKB, (Doc. 7, R&R), 2023 WL 8477951, at *7-9 (S.D. Ohio, 2023).[7]

The undersigned also rejects Plaintiff's contention that she should be permitted to present her claims to this Court because her remedy in state court is inadequate. Judge Cole previously addressed this issue in No. 1:23-cv-728-DRC-SKB. "[T]he juvenile court provides an adequate forum for Chappel to raise her constitutional due process

---

[6]Plaintiff's current "Prayer for Relief and Injunction" expressly requests this Court to order "Immediate Reunification of the Plaintiff's Children with their parents and each other." (Doc. 1-1, PageID 36). Lest there be any doubt as to the source of Plaintiff's claimed injury, her request for relief would overturn the state court's custody orders to date. In fact, she specifically seeks an order "vacating improper orders" issued by Judge Spencer, Magistrate Hunter, Judge Clark in their official capacities. (*Id.*)

[7]In both of her prior two cases, Plaintiff amended her complaint to limit her requests for relief after the assigned magistrate judges suggested that *Rooker-Feldman* would bar this Court from directly altering state court custodial orders. In *Chappel v. Adams Cnty Children's Services*, Judge Dlott held that the amendment did not change the <u>source</u> of the injury and that *Rooker-Feldman* would still apply. By contrast in *Chappel v. Hunter*, Judge Cole declined to address the application of *Rooker-Feldman* after Plaintiff eliminated her request to overturn the state court orders. *Id.* at n.9. Nevertheless, Judge Cole agreed that *Younger* abstention barred Plaintiff's remaining claims for injunctive relief. *See id.*, 2024 WL 1307221, at *6-7.

challenges." (*Id.*, Doc. 9 at 16-17 and n.7, rejecting Chappel's argument that the state court proceedings were unfair based on speculation that the court tampered with evidence and her disagreement with the court's rulings). Plaintiff adds nothing to her latest complaint to alter that conclusion.

## B. Further Analysis of Plaintiff's Current Complaint

The undersigned writes further to discuss additional reasons for the dismissal of Plaintiff's latest complaint, and to explain the basis for warning Plaintiff that filing further iterations are likely to result in a judicial finding that she is vexatious.

### 1. Additional Reasons Against the Exercise of Federal Jurisdiction

Just as in her prior two lawsuits, Plaintiff's claims generally challenge the procedures, orders and decisions of the Adams County Court of Common Pleas, Juvenile Court Division. More than a century ago, the United States Supreme Court proclaimed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus,* 136 U.S. 586 (1890). As previously discussed in No. 1:23-cv-728-DRC-SKB, what is commonly known as the domestic relations exception to federal subject matter jurisdiction encompasses all cases "involving the issuance of a divorce, alimony, or child custody decree." *See Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S. Ct. 2206 (1992). Plaintiff's claims fall squarely within that exception, meaning that all of her claims for monetary, injunctive, and declaratory relief are barred. *Accord Stephens v. Hayes*, 374 Fed. Appx. 620, 623 (6th Cir. 2010). Her speculative and conclusory allegations of due process violations do not alter the equation on the record presented. *See Danforth v. Celebrezze,* 76 Fed. Appx. 615, 616 (6th Cir. 2002). Additionally, as Judge Cole explained

in No. 1:23-cv-728-DRC-SKB, Plaintiff lacks standing to assert any type of due process claims on behalf of her children, because she no longer has custody of them. *See Elk Grove Unified School Dist. v. Newdow*, 124 S.Ct. 2301, 2312, 542 U.S. 1, 16-18 (2004), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Multiple other reasons also counsel against the assumption of federal jurisdiction. Apart from the domestic relations exception, this Court lacks jurisdiction to review Plaintiff's claims because the source of her injury is founded on the state court's rulings. *See generally Chappel,* 2023 WL 4191724, *3-4 (internal footnote omitted, discussing the *Rooker-Feldman* doctrine). Although Magistrate Judge Litkovitz expressed some doubt in her first complaint as to whether *Rooker-Feldman* would apply after Plaintiff dropped her direct request for reversal of the Juvenile Court's orders,[8] Plaintiff has renewed her request for reversal of the state court rulings in this case. In any event, Judge Dlott determined that the doctrine still applied even after Plaintiff dropped her direct request for reversal of the state court's rulings. *See Chappel*, 2023 WL 4191724 at *7 (citing *Hall v. Bush*, No. 1:20-cv-731, 2021 WL 4239855, at *6 (W.D. Mich. July 21, 2021), *report and recommendation adopted*, 2021 WL 3750164 (W.D. Mich. Aug. 25, 2021)).

Last but not least, the *Younger* abstention doctrine bars Plaintiff's claims for injunctive relief. Plaintiff's latest complaint confirms that the custody proceeding remains

---

[8]Under *Rooker-Feldman*, federal jurisdiction may still attach where a litigant presents an *independent* claim that challenges the constitutionality of a state official's action. But in No. 1:22-cv-747-SJD-KLL, the Court pointed out that Plaintiff had failed to state any independent claim, in part because she failed to properly sue the Adams County Board of Commissioners. The Court reasoned that even if she had named the Board as a defendant, her "claim would fail because she did not allege that a specific policy, custom, or decision of the Adams County Board of Commissioners caused her alleged constitutional injury as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978)." *Chappel*, 2023 WL 4191724, at *4 (S.D. Ohio May 19, 2023). As in her first case, Plaintiff's current claims fail because she does not name the Adams County Board of Commissioners.

ongoing. Again, the undersigned incorporates the Court's most recent analysis concerning *Younger* abstention in full. *See* No. 1:23-cv-728-DRC-SKB, Doc. 7, R&R at PageID 535-536 and Doc. 9 at PageID 595-597 (discussing doctrine at length as fully applicable to all claims that were not otherwise foreclosed); *see also* No. 1:22-cv-747-SJD-KLL, 2023 WL 2568300, at *4-5 (S.D. Ohio March 20, 2023); *id.*, 2023 WL 4191724, at *4, n.8 and at *7 n.12. In short, *Younger* abstention provides another firm jurisdictional bar to many of the claims presented in Plaintiff's latest complaint. *See generally, Kelm v. Hyatt*, 44 F.3d at 419-421.

**2. Failure to State a Claim Under § 1983**

Even if a reviewing court were to determine that this Court could exercise jurisdiction over any possible claim, the undersigned alternatively recommends dismissal <u>with prejudice</u> for failure to state any federal claim against any Defendant under § 1983. Given the failure to state any federal claim, the Court also should decline to exercise supplemental jurisdiction over any possible state claims.

Plaintiff insists that federal jurisdiction exists under 28 U.S.C. § 1331, which requires her to allege facts showing the cause of action arises under federal law. Here, she alleges that all Defendants violated her constitutional due process rights under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege and show: (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams,* 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks,* 436 U.S. 149, 155–56 (1978); *Black v. Barberton Citizens Hosp.,* 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must

be satisfied to support a claim under § 1983. *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir. 1991).

The reasons as to why Plaintiff's complaint fails to state a claim under § 1983 nearly equal the reasons that this Court lacks jurisdiction. Start with the identified Defendants. Plaintiff purports to seeks declaratory and injunctive relief against Judge Spencer, Magistrate Hunter, Judge Clark, Tyler Cantrell, Sara Shelton, and Mackenzie Carrington in their official capacities, and seeks various forms of monetary damages against the same six Defendants and a seventh individual, Ms. Tumbleson, in their individual capacities. (Doc. 1-1 at PageID 36-37). As the undersigned previously discussed in No. 1:23-cv-728-DRC-SKB, however, the doctrine of absolute judicial immunity bars all claims against Judge Spencer, Magistrate Hunter, and Judge Clark. See *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pearson v. Ray*, 386 U.S. 547 (1967); *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).

Every allegation against the judicial officers concerns words spoken or actions undertaken in their judicial capacities in connection with the ongoing custody proceedings. Judges retain absolute immunity even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001). "Whether an action is judicial depends on the nature and function of the act, not the act itself." *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999). "'Judicial immunity' is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007).

15

Plaintiff's attempts to name the judicial officers in both their official and individual capacities, and conclusory allegations that they acted without jurisdiction, are patently insufficient to overcome this absolute bar.

Likewise, former GAL Carrington, as an advisor to the court, occupies a position that falls "squarely within the judicial process" and therefore is also entitled to absolute judicial immunity from suit under federal law. *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (citing *Briscoe v. LaHue*, 460 U.S. 325, 325 (1983)). A guardian ad litem also enjoys absolute immunity under Ohio law. *See Kriwinsky v. Deligianis*, No. 1:22-cv-1599, 2023 WL 4421634, at *3 (N.D. Ohio May 10, 2023); *see also*, *generally*, *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Services*, 640 F.3d 716, 726 (6th Cir. 2011) (quoting *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422-23 (6th Cir. 2001) (holding that social worker had absolute immunity including for actions taken during the underlying investigation, when that investigation was "intimately related to the judicial phase of child custody proceedings").

After eliminating the four Defendants entitled to absolute judicial immunity, the Court is left with Plaintiff's § 1983 claims against two court-appointed attorneys (Cantrell and Shelton), Ms. Tumbleson, and "Does 1-100." But Plaintiff also fails to state a claim against any of those Defendants. For example, to the extent that Plaintiff's claims for monetary damages are asserted against any state court officer or employee in his or her official capacity, Plaintiff fails to state a claim because the Eleventh Amendment bars recovery of such damages. "[T]he Juvenile Court is considered an arm of the state and cannot be subject to a § 1983 or any other suit for monetary relief." *Meyers v. Franklin Cnty. Court of Common Pleas*, 81 Fed. Appx. 49, 55, 2003 WL 22718238, at *6 (6th Cir.

2003) (quoting *Mumford v. Basinski,* 105 F.3d 264, 269 (6th Cir.1997)). "[T]here is a jurisdictional problem under the Eleventh Amendment." *See Chappel*, No. 1:23-cv-728-DRC-SKB, (Doc. 9 at 13 and 15, PageID 593-595) (discussing case law).

Plaintiff's claims against her two prior court-appointed attorneys are also subject to summary dismissal. "It is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes of § 1983." *Jordan v. Kentucky,* No. 3: 09 CV 424, 2009 WL 2163113, at *4 (6th Cir. July 16, 2009), citing *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445 (1981).

That leaves only Defendant Tumbleson and the John/Jane Does. Ms. Tumbleson is alleged to be a County employee and Plaintiff purports to sue her in both official and individual capacities. But all actions allegedly taken by Ms. Tumbleson were in connection with the state court custody proceedings, and/or at the express direction of the Juvenile Court. Arguably, even a local government official could claim quasi-judicial immunity for actions undertaken at the express direction of a state court in connection with that court's custody determination.

In addition, although the Eleventh Amendment applies only to state employees rather than to county officials, *see* No. 1:23-cv-728, Doc. 9 at PageID 595, n.5, Defendant Tumbleson cannot be held liable in her official capacity absent the assertion of a clear county "policy or custom" that caused the injury. *See infra* at n. 8; *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 694. Not only does Plaintiff fail to connect Ms. Tumbleson's actions with a clearly stated Adams County policy or custom (as opposed to a juvenile court policy), but she has once again failed to name the Adams County Board of

Commissioners – the same fatal defect noted by Magistrate Judge Litkovitz in the dismissal of her first complaint.[9]

Plaintiff also has failed to state a sufficient claim against Ms. Tumbleson because the sum of her allegations are that: (1) Defendant lacks the proper licensing credentials (Doc. 1-1, ¶ 60, PageID 19); (2) Defendant insisted that Plaintiff report to the court rather than the health department for a drug screen in October 2023 (*Id.*, ¶¶ 64-67); and (3) Defendant canceled Plaintiff's appointments and reported her as non-compliant to the court (*id.*, ¶¶ 69-70). Plaintiff does not explain how such actions violated Plaintiff's constitutional due process rights. To the extent Plaintiff is basing her claims against Tumbleson solely on some type of violation of a state licensing statute or regulation, she fails to state a claim because § 1983 can only remedy a violation of *federal* or constitutional law. *See Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate").

Last, Plaintiff appears to have included no allegations at all against any of the "Does 1-100" who allegedly acted under color of state law. Identifying who harmed the plaintiff and how they did so is a "basic pleading essential" required to state a claim. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Wal-Mart Stores, Inc.*, 507 Fed. Appx. 543, 547 (6th Cir. 2012) (courts "are not required to conjure up allegations not pleaded or guess at the nature of an argument."). "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of

---

[9]Yet another difficulty for Plaintiff is mootness, insofar as she seeks injunctive relief from two judicial officers, two former attorneys, and a GAL who are no longer involved in the state court custody case.

constitutional rights must allege...facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). That is, Plaintiff must show that the alleged violation of his constitutional rights "was committed *personally*" by the defendant. *Id*. (emphasis in original); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (persons sued in their individual capacities under § 1983 are liable only for their own unconstitutional behavior) (citations omitted).

### 3. Grounds for Precluding Repetitive Litigation

In No. 1:23-cv-728-DRC-SKB, the undersigned suggested that Plaintiff's second lawsuit could be dismissed based on non-mutual claim preclusion, reasoning that her "new and improved" claims should be foreclosed by her first complaint. "From well before our country's founding, judicial tribunals have recognized the need for doctrines like claim preclusion (or 'res judicata') and issue preclusion (or 'collateral estoppel') to protect the finality of their judgments and prevent parties from relitigating the same disagreement in perpetuity." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021). But in dictum, Judge Cole expressed disagreement with the viability of the doctrine of non-mutual claim preclusion. *See* No. 1:23-cv-728-DRC-SKB, (Doc. 9 at n.9, PageID 597-598); *contrast*, *generally, Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992) (per curiam) (upholding dismissal of pro se litigant's successive complaint against new defendants, applying doctrine of nonmutual claim preclusion). As discussed, greater identity of defendants exists between Plaintiff's current complaint and her second complaint than existed between her first and second pleadings. But even if claim preclusion does not

strictly apply due to the dismissal of the second complaint without prejudice rather than on the merits,[10] the undersigned nevertheless recommends that Plaintiff's third complaint be dismissed as duplicative under 28 U.S.C. § 1915(e)(2)(B). In addition, the undersigned concludes that Plaintiff should be expressly warned at this juncture that any further complaints that she files in this Court concerning the same subject matter may be considered to be vexatious, and may result in both the dismissal of her lawsuit "with prejudice" and the imposition of prefiling restrictions as a sanction.

"[I]n rare circumstances,...a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct) even a case over which it lacks jurisdiction." *See Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) (cleaned up, citations omitted); *Revere v. Wilmington Finance*, 406 Fed. Appx. 936, 937 (6th Cir. 2011); *Jones v. United States*, 2021 WL 981298, at *3 (W.D. Tenn. March 16, 2021) (dismissing frivolous case with prejudice notwithstanding lack of subject matter jurisdiction). Given that the above-captioned lawsuit is the third filed by Plaintiff based on the same subject matter and as to which summary dismissal is recommended, it is fair to consider whether Plaintiff's course of conduct already warrants dismissal "with prejudice" or some other form of sanction.

Under 28 U.S.C. § 1915(e)(2)(B), a court may summarily dismiss repetitive litigation as frivolous or malicious without regard to whether a prior dismissal was with or without prejudice. Unfortunately, the amount of time required to determine whether a new complaint is duplicative or repetitive is often quite significant. This case, requiring close review of three separate complaints and hundreds of pages of exhibits by (to date) five

---

[10]In addition to criticizing the fact that Plaintiff's prior litigation was dismissed for lack of jurisdiction, Judge Cole was critical of the application of res judicata because Plaintiff's second complaint identified a different set of defendants. By contrast, the instant complaint identifies six of the same Defendants as were named in her second lawsuit.

different judicial officers and associated court staff, illustrates that point. Each successive new complaint increases the burden on scarce judicial resources since each new complaint must be compared in painstaking detail to each prior version, along with the Court's prior analysis in each case.

Thankfully, summary dismissal of repetitious complaints is not the only tool in the judicial toolbox. When a litigant either fails or refuses to comprehend the basis for the prior dismissals and continues to file additional lawsuits subject to dismissal on the same grounds, a federal court may deem that litigant to be vexatious and impose an appropriate sanction. *See Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d at 938-940 (affirming imposition of monetary sanctions and injunction that prohibited plaintiffs from filing any civil lawsuit in federal court that included similar claims without written permission); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir.1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."); *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir.1987); *Stewart v. Fleet Financial*, 229 F.3d 1154, 2000 WL 1176881 (6th Cir. Aug. 10, 2000) (Table) (upholding sanctions against pro se litigant who had repeatedly attempted to collaterally attack foreclosure and eviction, and was using the judicial system to harass and punish anyone who had anything to do with those actions). *See also, generally Matter of Chaban*, Case No. 2:17-cv-11139, 2017 WL 2544346 (E.D. Mich. June 13, 2017) (directing plaintiff to "show cause" under Bankruptcy Rule 8020 why the court should not sanction him for filing a fifth frivolous appeal of a bankruptcy court order).

In part because Plaintiff has not <u>yet</u> been warned that filing duplicative lawsuits may be considered to be vexatious, the undersigned recommends that the Court

21

summarily dismiss this repetitive third case without prejudice. At the same time, Plaintiff should be warned at this time that, should she persist in filing another case concerning the same subject matter, it will be dismissed <u>with prejudice</u> as a sanction for her misconduct. In sum, Plaintiff should be forewarned that filing any future complaint based on the same custody proceedings is likely to result in a finding that she is a vexatious litigant who should be made subject to prefiling restrictions.

### V. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Plaintiff's new civil complaint be **DISMISSED without prejudice** for lack of jurisdiction under 28 U.S.C. § 1915(e)(2)(B);

2. In the alternative, should a reviewing court determine that any jurisdiction exists, <u>Plaintiff's federal claims should be dismissed with prejudice</u> based on her attempts to sue Defendants who are immune from suit, as well as her failure to state any claim, while any remaining state court claims should be dismissed without prejudice;

3. Plaintiff's motions for a preliminary injunction and temporary restraining order and for a stay of state court proceedings (Docs. 5, 6) should be DENIED, either on the merits for the reasons stated, or alternatively as moot in light of the recommended dismissal of her complaint.


        *s/Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAWN CHAPPEL,                                             Case No. 1:24-cv-318

      Plaintiff,                                     Hopkins, J.
                                                         Bowman, M.J.

   v.

MAGISTRATE DAVID HUNTER, et al.,

      Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).